**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| MATTHEW D. KOHUS, | : | |
| Plaintiff, | : | Case No. 3:12cv00324 |
| vs. | : | District Judge Walter Herbert Rice<br>Chief Magistrate Judge Sharon L. Ovington |
| OHIO STATE HIGHWAY PATROL, *et al.*, | : | |
| | : | |
| Defendants. | | |

**REPORT AND RECOMMENDATIONS[1]**

### I. Introduction

Plaintiff Matthew D. Kohus initially filed his 45-page Complaint *pro se* against three Defendants plus "Does 1-50" concerning events that ended in the termination of his employment as an Ohio State Trooper. He has since retained counsel. The three Defendants named in the Complaint are the Ohio State Highway Patrol, the Ohio Department of Public Safety, and the Ohio State Troopers Association, Inc. (Defendant Union). The Complaint asserts four enumerated Counts claiming violations of the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, Title VII of the Civil Rights Act of 1964, and breach of contract. The only enumerated Count directed at

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Defendant Union (and all other Defendants) asserts the claim for breach of contract.

This case is presently pending upon Defendant Union's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Doc. #6), Plaintiff's Memorandum in Opposition (Doc. #12), Defendant Union's Reply (Doc. #14), and the record as a whole.

After he filed his *pro se* Complaint, Plaintiff retained counsel who prepared and filed Plaintiff's Memorandum in Opposition to Defendant Union's Motion to Dismiss. (Doc. #12).

## II. **Plaintiff's Complaint**

Plaintiff's employment as an Ohio State Trooper began in March 2006. He received a letter of termination on January 8, 2011.

Plaintiff alleges that from nearly the start of his employment as an Ohio State Trooper, Defendants subjected him "to a variety of unlawful, meritless acts of employment discrimination, harassment, retaliation, due process and other constitutional violations." (Doc. #1, PageID at 4-5). Plaintiff asserts that he is a qualified individual with a learning disability. *Id*., PageID at 4.

Accepting the allegations in Plaintiff's Complaint as true, *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), paints the following portrait of workplace conflict:

- On different occasions, female employees of Defendant Ohio State Highway Patrol (OSHP) told Plaintiff about various incidents of workplace sexual harassment they had experienced. Plaintiff reported the harassment reports to his employer, Defendant OSHP, as required by anti-discrimination and harassment policies. For example, in early 2007,

2

>  Plaintiff reported to his Assistant Post Commander that the Post Commander had engaged in inappropriate workplace sexual activity. Plaintiff was reminded that he was a probationary employee, and he was told to keep his mouth shut. Soon thereafter Plaintiff was subjected to "nitpicky" complaints about his paperwork. He was forced to slightly modify his paperwork or re-file his paperwork or complete more paperwork during off-duty work hours.

- On May 7, 2007, while Plaintiff was on duty, he was poisoned by an unknown toxin someone had covertly placed in or on his police vehicle. The toxin caused him extreme pain and temporary loss of sight in his right eye. He also experienced a temporary respiratory constriction, requiring emergency medical treatment. An internal investigation of the poisoning incident involved an intentional cover-up of the illegal acts committed by certain employees of Defendant OSHP. No criminal or disciplinary charges emerged from the investigation.

- In August 2007, Plaintiff was patrolling late at night and unavoidably struck an object on the highway causing very minor damage to the OSHP police cruiser he was driving. He reported the incident, and an initial internal investigation concluded that the accident occurred as Plaintiff had described in his written statement. Several days later, the same investigator, acting upon orders from the Post Commander and Assistant Post Commander, submitted a second crash report that was completely contrary to the investigator's first crash report. The second report contained untruthful and misleading information, including that Plaintiff had struck a median embankment causing damage to the undercarriage of the cruiser he was driving. As a result of the second crash report, Plaintiff was accused of not being truthful about the precise location of the accident. This accusation led to further investigation of the incident.

- In September 2007, Plaintiff underwent a custodial interrogation lasting longer than two hours. During the interrogation, Plaintiff's requests for representation by counsel and/or Defendant Union were denied. He was forced to answer all questions due to the threat that if he did not answer, he would be terminated immediately. When Plaintiff later told the Union about the interrogation, he was told not to worry about any of it because the Union would make it all go away. But the matter did not go away.

- At some point, the "sham" investigation concluded. The resulting investigation report contained fallacious statements and other fabricated

3

    evidence. The report recommended Plaintiff's termination from his employment as an Ohio State Trooper.

- The investigation and report was an attempt by several OSHP personnel to trick Plaintiff into resigning from his job or to deceive him into believing he had been terminated.

- Plaintiff was not terminated. Instead, in November 2007, Defendant Union told Plaintiff that he must sign an agreement to extend his probationary period for 30 days or else he would be terminated. Plaintiff signed the 2007 agreement. A few months later, Plaintiff signed a second agreement, stating (in part) that the probationary period established by the first agreement was valid and did not end until February 13, 2008. Although Plaintiff signed this second agreement, it was not true that Plaintiff's probationary period had been extended until February 13, 2008. In addition to the extensions of his probationary period, Plaintiff was involuntarily transferred to a new Post farther from his home, family, friends, and disability-support system. The transfer was an effort to convince Plaintiff to quit his job.

- Defendant Union fraudulently induced Plaintiff to sign both the first and second employment agreements. Plaintiff was not given either notice of any charges against him or an opportunity to rebut any charges.

- The extensions of Plaintiff's probationary period were based on "trumped-up" job-performance allegations. There was never any performance issue with Plaintiff's work; he continually received positive performance reviews and commendations.

- In September 2008, Plaintiff filed a federal lawsuit, *Kohus v. Ohio State Highway Patrol, et al.*, Case No. 1:09cv00658 (S.D. Ohio) (Barrett, D.J.; Bowman, M.J.) asserting claims of employment discrimination including violations of the Rehabilitation Act of 1973. Soon after Plaintiff filed that case, the workplace discrimination, harassment, and retaliation against him increased.[2]

- Plaintiff received a letter in early November 2009 from an Assistant Ohio Attorney General, informing him that OSHP and the Ohio Department of

---

[2] In March 2011, Plaintiff filed a notice of voluntary dismissal of his previous, and the Court dismissed his case without prejudice. *Kohus*, Case No. 1:09cv00658 (Doc. #s 125, 129, 133).

4

>   Public Safety (ODPS) would not investigate the extreme discrimination, harassment, retaliation, and overt and deliberate hostile work environment he had reported. The letter explained that the investigation would not occur because Plaintiff had filed an employment-discrimination lawsuit in September 2008.

- From approximately December 2008 through February 10, 2009, Plaintiff timely filed seven charges of employment discrimination, harassment, hostile-work environment, and retaliation with each of the following U.S. agencies: Department of Justice, Department of Transportation, Department of Homeland Security, Department of Health & Human Services, Department of Energy, Department of Defense, and Department of Agriculture.

- From February 2009 through December 2010, Plaintiff filed 14 different grievances under the Collective Bargaining Agreement against OSHP and ODPS. Eleven of his charges raised claims of employment discrimination, harassment, retaliation, intimidation, hostile-work environment, and abuse of process. The OSHP, ODPS, and the Union failed to process all but one of Plaintiff's fourteen grievances.

- On September 6, 2010, Plaintiff performed a legal traffic stop while on-duty. The female driver that Plaintiff stopped acted in an erratic and unpredictable manner and failed to comply with Plaintiff's lawful orders. Plaintiff gave the female driver a fair share of opportunities to correct her behavior, but she continued to misbehave and she twice attempted to kick Plaintiff. Plaintiff eventually arrested the female driver, with the help of a second officer, by using reasonable force as he was trained to do.

- In late September 2010, an administrative investigation was begun to consider Plaintiff's professionalism and use of force during the September 6, 2010 traffic stop. In October 2010, Plaintiff was also charged with untruthfulness in connection with his report about the traffic stop. The ensuing investigation and proceedings led to the termination of his employment in January 2011. Plaintiff faults the investigation and proceedings for many deficiencies, including violations of the Union's Collective Bargaining Agreement and violations of his constitutional rights.

- Plaintiff, represented by Defendant Union, filed a grievance asserting that OSHP and ODPS had failed to follow the disciplinary procedures set forth in the Collective Bargaining Agreement. He wanted to add more claimed

5

        violations of the Collective Bargaining Agreement but was told by the Union that he could not do so.

- On December 17, 2010, Defendant Union and Defendant OSHP entered an agreement to waive step one of the grievance procedure and move directly to step two. After a step-two hearing, his grievance was denied.

- Plaintiff's grievance proceeded to step-three arbitration. An unfair and not impartial hearing was held in February 2011 after which Plaintiff's grievance was again denied. Plaintiff appealed the arbitrator's decision. He received a letter in November 2011 from an Assistant Ohio Attorney General informing him that OSHP and the Ohio Department of Public Safety would not process his notices of appeal.

*See* Doc. #1, PageID at 4-35.

### III.    <u>Breach of Contract Against Defendant Union</u>

Accepting Plaintiff's allegations as true and liberally construing Plaintiff's Complaint in his favor, *see Curtin*, 631 F.3d at 383, his breach-of-contract claim is based on two sections of the Collective Bargaining Agreement between Defendant Union and the State of Ohio: Section 20.10(3) provides that "[e]mployees shall have the right of Union Representation at each step of the grievance procedure...."; and Section 20.09(2) provides, "[d]isciplinary grievances shall be submitted to arbitration ...." (Doc. #6, PageID at 110-11). Alleged violations of the Collective Bargaining Agreement are included within the contract's definition of "grievances." *Id*., PageID at 106; §20.02(1). Plaintiff also alleges that in May 2008, he entered into a contract with the Union titled "DESIGNATION OF REPRESENTATION OF TROOPER MATTHEW D. KOHUS ('KOHUS-UNION AGREEMENT')." (Doc. #1, PageID at 20) (capitalization in Complaint).

6

Plaintiff claims that Defendant Union breached the requirements of the Collective Bargaining Agreement and the Kohus-Union Agreement by failing to fairly and adequately represent him in connection with the actions taken against him by Defendants OHSP and ODPS – including his termination – and by failing to pursue his numerous grievances.

Defendant Union seeks dismissal of Plaintiff's breach-of-contract claim under Fed. R. Civ. P. 12(b)(1) by asserting that Ohio's State Employment Relations Board – SERB – has exclusive jurisdiction over Plaintiff's breach-of-contract claim under Ohio Rev. Code §4117. Plaintiff acknowledges that Defendant Union is not subject to review by the National Labor Relations Board. (Doc. #12, PageID at 264). This is correct: neither state employers nor their employees are governed by federal labor laws. *See* 29 U.S.C. §152(2) and (3); *see also Moir v. Greater Cleveland Reg. Transit Auth.,* 895 F.2d 266, 269-70 (6th Cir. 1990); *Breckenridge v. Johnson*, 2:07-cv-0345, 2007 WL 3400591 (S.D. Ohio Nov. 13, 2007) (Kemp, M.J.) (citing *N.A.A.C.P., Detroit Branch v. Detroit Police Officers Ass'n.*, 821 F.2d 328, 331-31 (6th Cir. 1987)). Consequently, Plaintiff's breach-of-contract claim arises under Ohio law.

In Ohio, "[w]hen a public employee and an employer have entered into a collective bargaining agreement and a dispute arises, Ohio Revised Code § 4117 controls. If a party's claims 'arise from or depend on the collective bargaining rights created by [Ohio Revised Code] Chapter 4117, the remedies provided in that chapter are exclusive.'" *Zafirau v. Cleveland Mun. Sch. Dist.*, 448 F. App'x 531, 536 (6th Cir. 2011) (citing, in

7

part, *Franklin Cnty. Law Enforcement Ass'n v. Fraternal Order of Police,* 59 Ohio St.3d 167, 572 N.E.2d 87, 91 (1991) (other citation omitted)).

Plaintiff's breach-of-contract claim rests upon his allegation that Defendant Union failed to fairly and adequately represent him (in many ways) is "essentially an allegation of an unfair labor practice pursuant to Ohio Rev. Code §4117.11(B)." *Zafirau*, 448 F. App'x at 536; *see State ex rel. Ohio Dept. Of Mental Health v. Nadel*, 98 Ohio St.3d 405, 410 (1993). "[A]cts which constitute unfair labor practices under §4117 are subject to the exclusive jurisdiction of the State Employment Relations Board (SERB), the courts cannot review such claims on primary jurisdiction." *Zafirau*, 448 F. App'x at 536 (citation omitted); *see Murray v. City of Columbus*, 2012 WL 4475718 at *10 (Sept. 26, 2012) (Marbley, D.J.); *see also Nadel*, 98 Ohio St.3d at 410. As a result, Plaintiff's claim that Defendant Union is liable for breach of contract "must first be brought with SERB, not the federal district court. Jurisdiction over the employment rights of public employees properly rests with SERB ...." *Featherstone v. Columbus Pub. Sch.*, 39 F. Supp.2d 1020, 1025 (S.D. Ohio 1999) (Marbley, D.J.); *see Bero v. E. Knox Cnty. Joint Fire Dist.*, 2:11-CV-411, 2011 WL 5119459 at *3 (S.D. Ohio Oct. 27, 2011) (Frost, D.J.) (same).

Plaintiff contends that the rule established in *Jones v. Truck Drivers Local Union No. 299*, 838 F.2d 856, 874-75 (6th Cir. 1988) conflicts with Defendant Union's reliance on SERB and its exclusive jurisdiction. However, the specific quotation from *Jones* on which Plaintiff relies carries no precedential value because it comes from the dissenting opinion of one Circuit Judge. Plaintiff does not point to a case decided by the Sixth

Circuit Court of Appeals that adopted the dissenting opinion's reasoning in *Jones*. In addition, *Jones* is distinguished from the present case because it involved Michigan law, rather than any section of Chapter 4117 of the Ohio Revised Code, and *Jones* did not consider or address the exclusive jurisdiction of Ohio's SERB.

Accordingly, Defendant Union's Motion to Dismiss Plaintiff's breach-of-contract claim is well taken.[3]

## IV. Constitutional Claims

Defendant Union argues that any constitutional violations Plaintiff's Complaint attempts to raise against it under 42 U.S.C. §1983 fail to state a claim upon which relief can be granted because (1) it is not a state actor and did not act under the color of state law; and (2) the process provided to Plaintiff was constitutionally adequate.

Plaintiff maintains, "A private actor who engages in concerted action with state actors may be liable under §1983." (Doc. #12, PageID at 262). Plaintiff notes that "the members of Defendant Union are law enforcement officers who are quintessential state actors ...." *Id.*, PageID at 261.

To overcome a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "(1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478,

---

[3] In light of this conclusion, there is no need to address Defendant Union's alternative argument that Plaintiff's contractual claim must be arbitrated, rather than proceeding in this Court.

9

488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 1965 (2007)). Facial plausibility is present if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct.1937, 1949 (2009). "A pleading that offers 'labels and conclusions' ... will not do.' Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* (internal citations omitted). Deciding whether a Complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*, 556 U.S. at 663-64, 129 S.Ct. at 1940.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged violation was committed by a person acting under color of state law." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001) (quoting *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250 (1988)). "[A]cting under color of state law requires that the defendant in a §1983 action ha[s] exercised the power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* at 533 (quoting, in part, *West,* 487 U.S. at 49, 108 S.Ct. 2250).

"A plaintiff may not proceed under § 1983 against a private party 'no matter how discriminatory or wrongful' the party's conduct." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting, in part, *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119

10

S.Ct. 977, 143 L.Ed.2d 130 (1999)). Yet, "[i]f a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983 ...." *Cooper v. Parrish,* 203 F.3d 937, 952 n. 2 (6th Cir. 2000). "A private actor acts under color of state law when its conduct is 'fairly attributable to the state.'" *See Romanski v. Detroit Entm't, L.L.C*., 428 F.3d 629, 636 (6th Cir. 2005) (citation omitted); *see Memphis, Tenn. Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004).[4]

The civil-conspiracy standard applies to resolve whether Defendant Union acted under the color of state law by conspiring with Defendants OSHP or ODPS to violate Plaintiff's constitutional rights:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Memphis Local AFL-CIO*, 361 F.3d at 905 (quoting *Hooks v. Hooks,* 771 F.2d 935 (6th Cir. 1985)). "'It is well-settled that conspiracy claims must be pled with some degree of

---

[4] In general, three tests apply to determining whether a private entity acted under the color state law: "(1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test." *Romanski*, 428 F.3d at 636 (citations omitted). But these three "tests are 'relevant only in cases in which there are no allegations of cooperation or concerted action between state and private actors.'" *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007) (quoting, in part, *American Postal Workers Union, Local 96 v. City of Memphis,* 361 F.3d 898, 900-01 (6th Cir. 2004)). Plaintiff's allegations of cooperation or concerted action between Union Defendant and the other Defendants render the three tests inapplicable. *See id*.

specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

Accepting Plaintiff's allegations as true and liberally construing his *pro se* Complaint in his favor, *see Curtin*, 631 F.3d at 383, the Complaint fails to allege the plausible existence of a conspiracy between Defendant Union and Defendant OSHP or Defendant ODPS to violate his constitutional rights. The four specifically enumerated Counts in the Complaint do not raise a claim of civil conspiracy. The Complaint's main focus is directed at the acts or omissions by OSHP and ODPS without specific allegations that connect Defendant Union to those acts or omissions. At best for Plaintiff, the Complaint sometimes mentions Defendant Union together with the other Defendants, but when it does so, it fails to identify facts or circumstances sufficient give rise to a reasonable inference that Defendant Union and Defendant OSHP or Defendant ODPS had a single plan or an agreement to violate Plaintiff's constitutional rights. For example, Plaintiff's allegations about Defendant Union's actions in connection with the 2007 and 2008 Agreements to extend his probationary period reveal no underlying conspiratorial plan or agreement to violate his constitutional rights. Plaintiff alleges, "KOHUS was coerced by OSHP, ODPS, and UNION officials into signing an agreement (the '2007 AGREEMENT') to extend his already then-expired new employee probationary period ...." (Doc. #1, PageID at 15 (capitalization in original)). Assuming that Defendants

engaged in such coercion, the existence of coercion – without more specific facts – shows similar action but no single plan or conspiratorial agreement to violate Plaintiff's constitutional rights. In other words, although the timing of coercion was nearly simultaneous, the timing alone says nothing about a plan or agreement to violate his constitutional rights. The same flaw appears in Plaintiff's allegation that "OSHP, ODPS, and the UNION failed and refused to process all but one (1) of [Plaintiff's] fourteen different grievances...." (Doc. #1, PageID at 21). The fact, by itself, that Defendants acted in this manner at or near the same point in time shows similar action but no conspiratorial plan or agreement to violate Plaintiff's constitutional rights. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting, in part, *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

A similar pleading inadequacy appears in Plaintiff's allegation that "OSHP, ODPS, and UNION officials fraudulently induced KOHUS to sign a second adverse employment agreement ...." (Doc. #1, PageID at 18). Without additional supporting facts, this conclusion of fraudulent inducement does not indicate the existence of single conspiratorial plan or agreement to violate Plaintiff's constitutional rights. "A pleading that offers 'labels and conclusions' ... will not do.' Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (internal citations omitted).

Lastly, Plaintiff requests that "in the event the court finds that the complaint falls

short of the pleading requirements..., [he] be given an opportunity to amend his Complaint in light of any guidance the court can offer." (Doc. #12, PageID at 267). This request should be denied because Plaintiff provides no basis for allowing him to re-assert in an amended pleading his futile claims against Defendant Union. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.").

Accordingly, Defendant Union's Motion to Dismiss Plaintiff's §1983 claims is well taken.[5]

**IT IS THEREFORE RECOMMENDED THAT:**

Defendant Ohio State Troopers Association, Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Doc. #6) be GRANTED.


September 26, 2013

                                         s/Sharon L. Ovington
                                               Sharon L. Ovington
                                   Chief United States Magistrate Judge

---

[5] Due to the absence of state action by Defendant Union, there is no need to address its due-process arguments.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).